**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| North County Communications Corp., | No. CV09-2623-PHX-NVW |
| Plaintiff, | **ORDER** |
| vs. | |
| Cricket Communications Inc., et al., | |
| Defendant. | |

Before the Court is the Motion to Dismiss of Sprint and Verizon Wireless (doc. # 31) and Defendants T-Mobile USA, Inc., AT&T Mobility, LLC, AT&T Mobility II, LLC, and Cricket Communications, Inc.'s (1) Joinder in Sprint and Verizon Wireless' Motion to Dismiss Complaint and (2) Additional Motion to Dismiss Complaint (doc. # 33).

## I. Legal Standard

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). To avoid dismissal, a complaint must contain "only enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009).

**II.     Facts Assumed True**

Plaintiff North County Communications Corporation is a competitive local exchange carrier that provides telecommunications services throughout Arizona pursuant to the Telecommunications Act of 1996. It provides switched local exchange, exchange access, and other telecommunications services to end users in Arizona.

Defendants Cricket Communications, Inc., AT&T Mobility, LLC, AT&T Mobility II, LLC, Nextel Retail Stores, LLC, Sprint Spectrum L.P. dba Sprint Nextel, T-Mobile USA, Inc., Verizon Wireless (VAW), LLC, and NTCH-CA, Inc., provide commercial mobile radio service ("CMRS") pursuant to 47 U.S.C. § 332 and the Telecommunications Act of 1996. Defendants offer calling plans allowing intraMTA[1] calls to areas serviced by Plaintiff. Defendants' end users make intraMTA calls to Plaintiff's end users. Plaintiff terminates calls sent to Plaintiff's end users by Defendants' end users and incurs costs in doing so. Defendants send traffic to Plaintiff in the absence of an interconnection agreement or a reciprocal compensation program.

Plaintiff began sending monthly bills to the Defendants for traffic termination in January, 2003. Consistent with Plaintiff's termination tariff and the Federal Communications Commission's ("FCC's") traffic termination default rate, Plaintiff billed Defendants $0.011 per minute, per call. Defendants have refused to pay these charges billed pursuant to tariff and have continued sending traffic to the Plaintiff's end users without compensating Plaintiff for call set-up or minutes of use.

On October 16, 2009, Plaintiff filed a Complaint for Damages and Declaratory Relief in the Maricopa County Superior Court, alleging five counts:

(1)     Enforcement of Tariff under 47 U.S.C. §§ 201, 206, and 207 for
          compensation for traffic sent to its end-users that originates with CMRS

---

[1] "MTA" means "Major Trading Area." 47 C.F.R. § 24.202(a).

|   |     | providers pursuant to its tariff on file for the period beginning October 16, 2006, and preceding April 29, 2005; |
|---|-----|---|
|   | (2) | Declaratory Relief under A.R.S. § 12-1831, *et seq.*, including a determination that Defendants are required to commit to compensate Plaintiff at a rate to be determined by the appropriate regulatory body or else refrain from sending any traffic to Plaintiff's end-users; |
|   | (3) | Open Account to recover amounts owed for termination services furnished by Plaintiff under contracts implied by Plaintiff's obligation to terminate calls, its tariff, the FCC's *T-Mobile Decision*,[2] and the lack of an interconnection agreement or a reciprocal agreement between Plaintiff and any of the Defendants; |
|   | (4) | Quantum Meruit for the termination services Plaintiff is required to provide but has not received compensation; and |
|   | (5) | Violation of Arizona Utilities Code for Defendants' failure to pay Plaintiff's tariff rates for terminating Defendants' traffic. |

On December 17, 2009, Defendants removed the action to this Court alleging federal question jurisdiction under 28 U.S.C. § 1331 because Count One arises under the Federal Communications Act of 1934, Federal Telecommunications Act, and the rules of the Federal Communications Commission and because Counts Two and Three seek to enforce purported rights allegedly arising under federal law. Plaintiff concurred in the removal.

Defendants Sprint and Verizon Wireless move to dismiss the Complaint as to all periods on and after April 29, 2005. Defendants T-Mobile USA, Inc., AT&T Mobility, LLC, AT&T Mobility II, LLC, and Cricket Communications move to dismiss the Complaint in its entirety.

---

[2]*In the Matter of Developing a Unified Intercarrier Comp. Regime*, CC Docket No. 01-92, Declaratory Ruling and Report and Order, 20 F.C.C.R. 4855 (2005) ("*T-Mobile Decision*").

## III. Jurisdiction

Under 28 U.S.C. § 1441(a), "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States," which is brought in a state court, may be removed to the federal district court. Under 28 U.S.C. § 1331, district courts have original jurisdiction over causes of action created by federal law and state-law causes of action that "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314, 125 S. Ct. 2363, 2368 (2005).

"The existence of federal question jurisdiction is ordinarily determined from the face of the complaint." *Sparta Surgical Corp. v. Nat'l Ass'n of Securities Dealers, Inc.*, 159 F.3d 1209, 1211 (9th Cir. 1998). "Under 28 U.S.C. § 1441(a), an action must be fit for federal adjudication when the removal petition is filed." *Id.* If a federal question does not appear on the face of the complaint, a defendant cannot remove a state-law claim from state to federal court even if its defense is based entirely on federal law. *Hunter v. United Van Lines*, 746 F.2d 635, 639 (9th Cir. 1984).

Counts One and Two, as pled at the time of removal, each necessarily raise a stated federal issue, actually disputed and substantial. Count One (Enforcement of Tariff) expressly states that it is brought under §§ 201, 206, and 207 of the Communications Act of 1934. *See* 47 U.S.C. §§ 201, 206, 207. Count Two (Declaratory Relief) seeks a judicial determination and declaration of Plaintiff's rights based on FCC rules requiring commercial radio service providers and local exchange carriers to compensate each other for termination of traffic. The Court thus has original subject matter jurisdiction over Counts One and Two.

Counts Three, Four, and Five do not necessarily raise a stated federal issue, actually disputed and substantial. Counts Three (Open Account) and Four (Quantum Meruit) seek common law remedies for damages arising from Defendants' failure to

compensate Plaintiff for services it provided to Defendants. Count Five alleges Defendants have violated Arizona utilities statutes by failing to pay Plaintiff's tariff rates for terminating Defendants' traffic. Although Defendants may raise federal defenses to these claims, Counts Three, Four, and Five do not provide grounds for federal question jurisdiction.

Whenever a cause of action within the jurisdiction conferred by 28 U.S.C. § 1331 is joined with one or more otherwise non-removable causes of action, the entire case may be removed and all issues determined by the district court, or the district court may remand all matters in which state law predominates. 28 U.S.C. § 1441(c). The district court, in its discretion, may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). In some circumstances, remand of a removed case involving supplemental claims will better accommodate the values of economy, convenience, fairness, and comity than will dismissal of the case. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351, 108 S. Ct. 614, 619-20 (1988).

For reasons explained below, the Court will:

(1) dismiss Counts One and Two for failure to state a claim upon which relief can be granted,

(2) apply the doctrine of primary jurisdiction to dismiss Counts One and Two without prejudice,

(3) decline to exercise supplemental jurisdiction over Counts Three, Four, and Five, and

(4) remand Counts Three, Four, and Five to the Maricopa County Superior Court.

## IV. Statutory and Regulatory Background

### A. Interstate Communications Practices Found by the FCC to Be "Unjust or Unreasonable" Are "Unlawful" Under § 201(b).

Federal law imposes a duty on "every common carrier engaged in interstate or foreign communication by wire or radio to furnish such communication service upon reasonable request" and, "in accordance with orders of the [FCC], to establish physical connections with other carriers, to establish through routes and charges applicable thereto and the divisions of such charges, and to establish and provide facilities and regulations for operating such through routes." 47 U.S.C. § 201(a). "All charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful." 47 U.S.C. § 201(b).

In § 201(b), Congress did not define which practices are "just and reasonable" and which are "unjust or unreasonable," but instead delegated to the FCC authority to apply § 201(b) through regulations and orders with the force of law. *Global Crossing Telecomm., Inc. v. Metrophones Telecomm., Inc.*, 550 U.S. 45, 58, 127 S. Ct. 1513, 1522 (2007). The FCC has implemented § 201(b) through the issuance of rules and regulations, most obviously when the rules approve or prescribe for the future rates that exclusively are "reasonable" or expressly prohibit certain carrier practices as unjust or unreasonable under § 201(b). *Id.* at 53, 127 S. Ct. at 1519. Section § 201(b) has long been thought to also prohibit rates that diverge from FCC prescriptions and rates or practices that unreasonably fail to conform to an FCC regulation. *Id.* at 59, 127 S. Ct. 1522. The FCC also may implement § 201(b) by finding that the failure to follow an FCC determination made under a different statutory provision is unjust or unreasonable under § 201(b). *Id.* at 60, 127 S. Ct. at 1523. Although not every violation of FCC regulations is an unjust and unreasonable practice, where there is an explicit statutory scheme, and compensation to certain participants is necessary to implementation of that

scheme, the FCC has authority to find that failure to comply with compensation requirements is an unreasonable practice. *Id.* at 56, 127 S. Ct. 1521.

### B. FCC Rules Require Mutual Compensation Between Local Exchange Carriers and Commercial Mobile Radio Service Providers for Termination Services.

Each telecommunications carrier has the duty "to interconnect directly or indirectly with the facilities and equipment of other telecommunications carriers." 47 U.S.C. § 251(a)(1). Each local exchange carrier has the duty "to establish reciprocal compensation arrangements for the transport and termination of telecommunications." 47 U.S.C. § 251(b)(5).

Before April 29, 2005, FCC rules did not prohibit incumbent local exchange carriers from filing state termination tariffs, and commercial mobile radio service providers were obligated to accept the terms of applicable state tariffs. *T-Mobile Decision*, ¶ 9. In February 2005, the FCC amended its rules to make clear its preference for contractual arrangements for mutual compensation over imposing tariffs that commercial mobile radio service providers must accept. *Id.* Effective April 29, 2005, FCC rules prohibit local exchange carriers from imposing compensation obligations for non-access[3] commercial mobile radio service traffic pursuant to tariff. *Id.*

FCC rules require that a local exchange carrier must provide the type of interconnection reasonably requested by a mobile service licensee or carrier unless it is not technically feasible or economically reasonable. 47 C.F.R. § 20.11(a). Further, FCC rules require that local exchange carriers and commercial mobile radio service providers "comply with principles of mutual compensation":

> (1) A local exchange carrier shall pay reasonable compensation to a commercial mobile radio service provider in connection with terminating traffic that originates on facilities of the local exchange carrier.

---

[3]"[T]he term 'non-access traffic' refers to traffic not subject to the interstate or intrastate access charge regimes, including traffic subject to section 251(b)(5) of the Act and [Internet service provider]-bound traffic." *T-Mobile Decision*, ¶ 1 n.6.

- 7 -

> (2) A commercial mobile radio service provider shall pay reasonable compensation to a local exchange carrier in connection with terminating traffic that originates on the facilities of the commercial mobile radio service providers.

47 C.F.R. § 20.11(b).

### C. Section 207 Provides a Private Cause of Action for an Act or Omission that Is Unlawful Under § 201(b).

Private rights of action must be created by Congress. *Greene v. Sprint Commn'c Co.*, 340 F.3d 1047, 1050 (9th Cir. 2003). Although § 251 does not itself create a private right of action for failure to establish reciprocal compensation arrangements or to pay compensation as required by 47 C.F.R. § 20.11(b), it may be found under 47 U.S.C. § 207.

Under 47 U.S.C. § 206, if a common carrier commits an act prohibited or declared to be unlawful, or fails to do an act required to be done, the common carrier shall be liable to those injured by the act or omission. Under 47 U.S.C. § 207, any person claiming to be damaged pursuant to § 206 may either file a complaint with the FCC or bring suit for recovery of such damages in any United States district court of competent jurisdiction. Thus, § 207 provides a private cause of action for alleged violation of § 201(b) as lawfully implemented by an FCC regulation. *Global Crossing*, 550 U.S. at 55, 127 S. Ct. at 1520.

However, § 207 does not provide a private cause of action without an FCC determination the alleged act or omission is unjust or unreasonable or prohibited by § 201(b). *North County Communications Corp. v. California Catalog & Technology*, 594 F.3d 1149, 1158, 1160 (9th Cir. 2010) ("*California Catalog*"). "[I]t is within the Commission's purview to determine whether a particular practice constitutes a violation for which there is a private right to compensation," and the FCC's determination "is integral to claims involving § 201(b)." *Id.* at 1158. In *California Catalog*, the Ninth Circuit held that claims similar to those here "are fatally flawed because the Commission has not determined that the [commercial mobile radio service] providers' lack of compensation to the [local exchange carriers] violates § 201(b)" and, without an

1 independent right to compensation, §§ 206 and 207 do not provide a means for seeking
2 relief. *Id.* at 1156. To date, the FCC has not made any findings that commercial mobile
3 radio service providers' failure to compensate local exchange carriers constitutes an
4 unreasonable practice in violation of § 201(b). *Id.* at 1160 (filed Feb. 10, 2010).

**V.     Counts One and Two Will Be Dismissed Without Prejudice.**

### A.     Count One: Enforcement of Tariff

Count One is brought under 47 U.S.C. §§ 201, 206, and 207. It alleges that Plaintiff is entitled to compensation pursuant to its tariff on file for traffic sent to its end users that originates with commercial mobile radio service providers for "the period beginning 3 years before the filing of this complaint and continuing up to and including April 28, 2005." Plaintiff acknowledges that it may not impose tariff obligations on commercial mobile radio service providers for services provided after April 28, 2005. Because "3 years before the filing of this complaint" is October 16, 2006, which is *after* April 28, 2005, Count One alleges damages incurred during a period that does not exist. Further, Plaintiff concedes that, under *California Catalog*, it cannot state a claim under § 201(b) without a prior FCC determination that failure to pay reciprocal compensation is an unjust or unreasonable practice and therefore unlawful under § 201(b).

Therefore, Count One will be dismissed for failure to state a claim upon which relief can be granted.

### B.     Count Two: Declaratory Relief

Count Two seeks declaratory relief under the Arizona Uniform Declaratory Judgments Act, A.R.S. § 12-1831, *et seq.*, regarding Plaintiff's entitlement to compensation for the termination of calls to Plaintiff's end users that originate on Defendants' networks. Count Two alleges:

> In addition, while determining the precise rate of compensation for termination of traffic, including call set-up and minutes of use, under these circumstances may be a matter beyond the expertise of this court and with the expertise of the appropriate regulatory body, the FCC has also indicated that "collection actions" do not state a cause of action under [] its rules. As a result, an actual controversy exists between the parties; and, it is in the interests of judicial economy for this court to determine (1) the number of

> calls and the number of minutes originating on the Defendants' networks and terminated on the Plaintiff's network from April 29, 2005 up through the time of trial, (2) that the Plaintiff is entitled to receive mutual compensation for the termination of calls to Plaintiff's end-users which originate on the Defendants' networks, and (3) that the Defendants are required to commit to compensate Plaintiff at a rate to be determined by the appropriate regulatory body, or else refrain from sending any traffic to Plaintiff's end-users and refrain from taxing Plaintiff's limited resources.

Plaintiff concedes that *California Catalog* precludes declaratory relief without a prior FCC determination that failure to pay reciprocal compensation violates § 201(b).

### C. Dismissal Without Prejudice Under the Doctrine of Primary Jurisdiction

The doctrine of primary jurisdiction does not implicate subject matter jurisdiction of the federal courts. *Syntek Semiconductor Co., Ltd. v. Microchip Technology Inc.*, 307 F.3d 775, 780 (9th Cir. 2002). "[I]t is a prudential doctrine under which the courts may, under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." *Id.* It is not equivalent to the requirement of exhaustion of administrative remedies and "is committed to the sound discretion of the court when protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *Id.* at 780-81. When a district court determines that primary jurisdiction applies, the court normally should dismiss the case without prejudice so that the parties may pursue their administrative remedies. *Id.* at 782. If dismissal would unfairly disadvantage the parties, the court may stay proceedings pending an administrative ruling. *Id.*; *see also Clark v. Time Warner Cable*, 523 F.3d 1110, 1114-15 (9th Cir. 2008).

Although the present case is similar to *California Catalog*, there are important differences between the actions. *California Catalog* was originally filed in federal district court; it was not removed from the state court. In *North County Communications Corp. v. California Catalog & Technology*, No. CV06-1542-LAB (S.D. Cal.), the operative complaint pled three causes of action:

(1) Declaratory Judgment, including a determination that Defendants are required to commit to compensate Plaintiff at a rate to be determined by the

- 10 -

|   |     | appropriate regulatory body or else refrain from sending any traffic to Plaintiff's end-users; |
|---|-----|---|
|   | (2) | Quantum Meruit for the termination services Plaintiff is required to provide but has not received compensation; and |
|   | (3) | Enforcement of Tariff. |

The Ninth Circuit concluded that "the district court properly dismissed North County's declaratory judgment claims, as North County cannot demonstrate a right to compensation under any statute or regulation that is enforceable pursuant to a federal private right of action." *California Catalog*, 594 F.3d at 1161. The Ninth Circuit then reasoned that because the district court dismissed the federal claims for jurisdictional reasons, it also lacked jurisdiction over Plaintiff's state-law claims. *Id.* at 1162. Applying the primary jurisdiction doctrine *sua sponte*, the Ninth Circuit disagreed with the district court's dismissal with prejudice and concluded Plaintiff's claims should have been dismissed without prejudice to allow filing of the federal claim in the proper forum. The Ninth Circuit, therefore, vacated the judgment and remanded to the district court for dismissal without prejudice. *Id.*

Although the declaratory judgment claims here are similar to those in *California Catalog*, the "Enforcement of Tariff" claims in the two actions differ significantly. In *California Catalog*, the Third Amended Complaint's "Enforcement of Tariff" claim did not on its face necessarily raise a stated federal issue as does the "Enforcement of Tariff" claim in this case. Therefore, here the Court has original jurisdiction over Count One (Enforcement of Tariff) as well as Count Two, and it may exercise removal jurisdiction over the remaining claims. Further, in *California Catalog*, the district court dismissed the federal claim under Fed. R. Civ. P. 12(b)(1) for jurisdictional reasons. Here, the federal claims will be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, and the Court has discretion to exercise supplemental jurisdiction over the remaining state-law claims. Giving consideration to the primary

1  jurisdiction doctrine, Counts One and Two will be dismissed without prejudice to permit
2  the parties to pursue administrative remedies.

### D. Leave to Amend Counts One and Two Will Not Be Granted.

Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). But, "[f]utility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Amendment of Counts One and Two would be futile because the FCC has not made the predicate determinations required for Plaintiff to state a claim upon which relief can be granted.

## VI. Counts Three, Four, and Five Will Be Remanded to State Court.

A district court has "the power to hear claims that would not be independently removable even after the basis for removal jurisdiction is dropped from the proceedings." *Harrell v. 20th Century Ins. Co.*, 934 F.2d 203, 205 (9th Cir. 1991). "It is generally within a district court's discretion either to retain jurisdiction to adjudicate the pendant state claims or to remand them to state court." *Id.* In *Harrell*, the Ninth Circuit recognized that "it is generally preferable for a district court to remand remaining pendent claims to state court," but concluded in that case the district court's retention of jurisdiction over the state-law claims was within its discretion. *Id.*

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 619 n.7 (1988). The lawsuit here is "the usual case" in which all federal-law claims are eliminated early in the litigation, and the principles of judicial economy, convenience, fairness, and comity are not promoted by federal retention of the state-law claims. Further, if federal-law issues are raised as defenses, the state courts are competent to decide them. *See, e.g.*, *Sullivan v. First Affiliated Securities, Inc.*, 813 F.2d 1368, 1372 n.5 (9th Cir. 1987). Therefore, in its discretion under 28 U.S.C. § 1367(c)(3), the Court will decline to exercise supplemental jurisdiction over Counts

Three, Four, and Five because it has dismissed all claims over which it had original jurisdiction.

A district court may relinquish jurisdiction over remaining supplemental claims either by dismissing the case without prejudice or by remanding it to the state court. *Carnegie-Mellon*, 484 U.S. at 351, 108 S. Ct. at 619-20. The district court has discretion to remand to state court, rather than dismiss, supplemental claims upon a determination that remand best serves the principles of economy, convenience, fairness, and comity. *Id.* at 357, 108 S. Ct. at 623. Here, remand avoids the delay, cost, inconvenience, and potential unfairness that may be imposed on Plaintiff by requiring it to file and serve its claims again in state court following dismissal without prejudice.

Therefore, the Court will decline to exercise supplemental jurisdiction over Counts Three, Four, and Five and will remand them to the state court.

IT IS THEREFORE ORDERED that the Motion to Dismiss of Sprint and Verizon Wireless (doc. # 31) and Defendants T-Mobile USA, Inc., AT&T Mobility, LLC, AT&T Mobility II, LLC, and Cricket Communications, Inc.'s (1) Joinder in Sprint and Verizon Wireless' Motion to Dismiss Complaint and (2) Additional Motion to Dismiss Complaint (doc. # 33) are granted as to Counts One and Two of Plaintiff's Complaint and denied as to Counts Three, Four, and Five of Plaintiff's Complaint.

IT IS FURTHER ORDERED that the Clerk enter judgment dismissing Counts One and Two of Plaintiff's Complaint without prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

IT IS FURTHER ORDERED that Counts Three, Four, and Five of Plaintiff's Complaint be remanded to the Maricopa County Superior Court.

The Clerk is directed to terminate this case.

DATED this 15th day of June, 2010.

_____
Neil V. Wake
United States District Judge